JOHNSON, Judge pro tem.
Plaintiff’s petition in this case in the First City Court of New Orleans alleges that on or about July 21, 1954, one Sam Davis paid unto defendant $300, the amount in which he was in default upon a preexisting debt owed by him to defendant; that Sam Davis, alias Carl Williams, was without funds to make such payment and that the money with which the payment was made had been stolen from plaintiff by Sam Davis acting in concert and conspiracy with others. Defendant’s answer admits that the payment in the amount and on the date was made “on account of a debt owed by said Sam Davis to defendant”. At the same time plaintiff filed two other suits on the exact same allegations but for different amounts. One is against Community Finance Service, Inc. to recover $486.50 and the other is against Public Discount Co., Inc. to recover $551. Counsel for each of these defendants admitted that Sam Davis made the payment but denied all other allegations. Counsel for defendant, Ala-tex Construction Service, Inc., on the day of the trial orally entered an exception of no cause of action. Counsel for defendant, Community Finance Service, Inc., filed exceptions of no right or cause of action with his answer, and counsel for Public Discount Co., Inc. filed exceptions of vagueness and of no right or cause of action with his answer. The three cases were consolidated for trial. All exceptions were referred to the merits. After trial on the merits, the trial court rendered separate judgment in each case sustaining the exception of no cause of action and dismissed plaintiff’s suit. Plaintiff has appealed and the three cases were consolidated in this court for argument.
Ernest Crawford, plaintiff, was the only witness called to testify in person at the trial. In addition to Crawford’s testimony counsel for plaintiff offered and filed in evidence four exhibits, to-wit: the depositions of Ophelia Lewis Johnson and Sam Davis (P-1); a stipulation by the attorneys for Ophelia Johnson and Sam Davis and Jack C. Benjamin, the Assistant United States Attorney for the Eastern District of Louisiana (P-2); a memorandum by Jack C. Benjamin, the Assistant U. S. Attorney, filed in a criminal prosecution by the United States Vs. Ophelia Johnson and Sam Davis (P-3); and a memorandum by the Circuit Judge for the County of Van Burén, State of Michigan, being the written reason for judgment in that court in a suit in that court by Ernest Crawford Vs. Ophelia Lewis, Alias Ophelia Johnson, Alias Mamie Williams, and Sam Davis, Alias Carl Williams (P-4).
These four exhibits were offered and filed in evidence by agreement and stipulation of counsel for all defendants as to the authenticity of each document but without admitting the facts and law contained therein. Such an agreement and stipulation as to the authenticity of the documents relieved the party offering them in evidence of the necessity of calling witnesses to lay the proper foundation as to authenticity of the documents. There was no objection made by any counsel as to the materiality, the relevancy or the admissibility of the contents of the documents and the whole of each document is in evidence and furnishes a part of the transcript and record as fully as though the documents had been copied into the transcript by the court reporter. P-3 and P-4 consist mostly of argument rather than evidence. Counsel for defendant did not call any witnesses or offer any evidence.
The evidence discloses that plaintiff owned property which the City of New Orleans expropriated for a consideration of $18,000, of which amount plaintiff actually received in his attorney’s office $17,500 in cash in seventeen $1,000 bills and $500 in smaller denominations; that plaintiff already possessed about $3,000 in cash; that *847 he put the money together, amounting to something over $20,000, and kept it in a cedar robe under lock in his home; that he was living at that time with Ophelia Lewis Johnson, as man and wife, though they were not married; that Ophelia Lewis was separated but not divorced from her lawful husband Johnson; that plaintiff kept the keys to his home and to the cedar robe on the same key ring in his wallet which he carried in his pocket; that on July 8, 1054, when he returned from work he found the house locked; that he opened his wallet to get the house key and discovered for the first time that the keys to his house and to the cedar robe were missing; that upon gaining entrance to the house Ophelia and her two small children and their clothes were gone; that he forced open the door to the cedar robe and his money was also gone.
Additional evidence reveals a somewhat fantastic scheme of facts and circumstances of a well laid and adroitly executed plan of conspiracy by Ophelia and Davis in which they took plaintiff’s money and appropriated it to their own use. Within a remarkably short period of time they were located in the State of Michigan ensconced under assumed names (Mamie Williams and Carl Williams), in an $8,000 home furnished with modern and expensive furniture all bought with plaintiff’s money. It is apparent that only good detective work prevented the theft and escape from being a complete success.
While defendants’ answers in all of these consolidated cases are in the form of general denials, the court in maintaining the exception of no cause of action accepted as true the well pleaded facts of plaintiff’s petition as the law requires. We find, also, that the evidence fully supports plaintiff’s allegations. Actually, in this court counsel for defendants do not dispute that the preexisting debts of Sam Davis were paid with money stolen from this plaintiff with Davis’ full knowledge of the theft. A further recitation of the undisputed evidence would be quite lengthy and under the circumstances would serve no useful purpose. Counsel for defendants rested their defense on the admitted good faith of all the defendants and upon common law jurisprudence, except for one Louisiana case which will be referred to hereinafter and Article 2138 of the Civil Code, LSA.
When seeking to resolve a dispute in Louisiana we must first look at the laws of this state to find if there are any provisions of Louisiana law determinative of the issue. If there is we are compelled to apply and follow that law before looking to foreign court decisions. There is positive Louisiana law applicable to the facts in these consolidated cases. It is Civil Code, Article 2139, LSA., which reads as follows:
“If money, or other stolen property, be given in payment, the payment is not good, and the owner may recover the amount paid.”
The language of this provision is so clear and unambiguous that we must be governed by it, unless there has been some radical departure in the English translation from the original text which does not bring into English a clear meaning of the law. We find no such error. The slight discrepancy in translation referred to hereinafter does not actually alter the meaning and apparent intent from the original text. There is some temptation here to indulge in more extensive study and review of the expressions of early authorities and text writers which may be said to constitute the legal history and development of comparative provisions of our Civil Code. The brief of counsel for plaintiff contains a short summary which we deem sufficient for the purpose here presented and we copy that portion of the brief as follows:
“In regard to this version of Article 2139 the Louisiana State Law Institute commented in West Louisiana Civil Code Annotated,
“ ‘History and Text of Former Codes RCC 1870, Art. 2139:
*848 “'(Error in English translation of French text — the words “If money, or other stolen property, he given in payment” should be “If the money or other articles with which payment is made are stolen”.)’
“The judgment of the Louisiana Law Institute in this regard is fortified by reference to the Pro jet of the Civil Code of 1825 as published in the Louisiana Legal Archives, Volume 1, page 282 in which the predecessor of Article 2139 is set out in its original correct form together with the original French text as follows:
“ 'If the money or other articles with which payment be made are stolen, the payment is not good, and the owner may recover the amount paid.’
“ ‘Si 1’argent ou les autres effcts qui ont ete donnes en payement, ont ete voles, le payement n’est pas volable, et le proprietaire pourra recouvrer le montaut de ce qui a ete paye.’
"These two articles in the Projet were later assigned the number 2135 in the Code of 1825. In connection with the question of the correct version of this article, the law is settled in Louisiana that in case of conflict the French text shall prevail since the original draft was in French, the English being a translation of the French. (Sample v. Whitaker, 1931, 172 La. 722, 135 So. 38; Straus v. City of New Orleans, 1928, 166 La. 1035, 118 So. 125; Phelps v. Reinach, 1886, 38 La.Ann. 547. See also Dubuisson, the Codes of Louisiana, 25 Rep. of Louisiana Bar Association 143, 146 (1924)).
******
“In regard to the preceding code article, the defendants have argued to the lower court that the two articles are in conflict. The preceding article, Article 2138 of the Revised Code of 1870, reads as follows:
“ ‘If the debtor give a thing in payment of his obligation, which he has no right to deliver, it does not discharge his obligation, and the owner of the thing may reclaim it in the hands of the creditor, unless the obligation has been discharged by the payment of money, or the delivery of some of those things which are consumed in the use, and the creditor has used them; in which case neither the money nor the things consumed can be reclaimed, and the payment will be good.’
“Article 2138 appeared only in a slightly different form in the Code of 1825, the Code of 1808 and the Code Napoleon of 1804. (See Article 2134 of Code of 1825; Article 138, Sec. 1, Chapter V, Title III, Book III of Code of 1808; Article 1238, Sec. 1, Chapter V, Title III, Book III of Code Napoleon of 1804.) Comments on this Article can be found in the French commentators, notably Pothier. (See Pothier, Treatise on the Law of Obligations, Vol. 1, Part 3, Chapter 1, Art. 3, Sec. 3, page 407 and Part 3, Chapter 1, Art. 1, number 459.)
“Art. 2138 contains three distinct principles, the third being an exception to the first two:
“First, the debtor who possesses without title cannot extinguish his obligation by giving in payment that which he has no right to deliver.
“Second, the true owner, ‘le propri-etaire’, may reclaim what he owns in the hands of the creditor.
“Third, neither of the above principles apply if the payment was money or those things consumed in use and the creditor has used them.
“Plaintiff submits that this article, considered alone, may include all debtors who possess by any conceivable mode of acquisition lawful or unlawful. The debtor of 2138 may possess by lease, pledge, as agent or overseer, as well as by trickery, theft, embezzlement or robbery, with violence or without, in *849 bad or good faith. Article 2138 merely treats broadly of the debtor who ‘gives a thing in payment * * * which he has no right to deliver.’
“However, in 1825, Article 2135 (later to become 2139 of the Revised Civil Code of 1870) was added ‘as an amendment’ to Article 138 of the Code of 1808. This article adds one narrow exception to the three principles of the foregoing article. It limits the type of acquisition by the debtor and thereby adds an exception to the third principle above stated. If the debtor pays with stolen money then the third principle does not apply and the first two do apply.
“Plaintiff submits that there is no conflict whatever between the two articles, one dealing with the possessor without title in the broadest sense and the other treating of a singular, narrow breed of debtor and possessor * * * the thief.
“That the redactors of the Projet of 1825 were concerned with stolen goods should not be a startling idea. The French Code Napoleon provides:
“ ‘ * * * the party who has lost anything, or from whom it has been stolen, may reclaim it within three years, computing from the day of the loss or robbery, against the party in whose hands he finds it; saving to the latter his remedy against the person from whom he obtained it.’ French Civil Code Art. 2279.
“The Louisiana Code of 1808 similarly provides:
“ ‘Art. 75. If a man has had a public and notorious possession of a moveable thing, during three years, in the presence of the person who claims the property of the thing, said person being a resident within the territory, is presumed to have known the circumstance of the possession and the property becomes vested in the possessor, unless the thing has been stolen.’ Art. 75, Sec. Ill, Chapter III, Title XX, Book III, Code of 1808.
“This article has come down to us as the present day article 3506 of the Code of 1870.
“Further, the special rule applying to stolen goods can also be traced to the Spanish antecedents of the Code of 1825. It is established historical fact that: * * the Civil Code (of 1808) did not contain many and important provisions of the Spanish laws still in force,’ at that time * * * and, as the Supreme Court held in Cot-tin v. Cottin, 5 Mart., O.S., 93, ‘ * * such parts of those laws only are repealed as are either contrary to, or incompatible with the provisions of the Code’. ‘It thus appeared that a much greater portion of the Spanish laws remained in force than had been at first supposed.’ (Preface by L. Moreau Lislet and Henry Carleton, to ‘Las Siete Partidas’ still in force in Louisiana in 1820.) One of the provisions of the Spanish laws in force after the adoption of the Code of 1808 and prior to the revision of 1825 was:
“ ‘If a man be forcibly deprived of a thing, he has his election to bring his action for it either against him who is in possession or the person who deprived him of it.’ Partida Third, Title II, Law 30, Liset and Carletons Par-tidas, page 50.
“With such a background in the French and Spanish Codes, it is difficult to maintain that a special rule in regard to stolen money was an error— or an oversight — or ‘in conflict’ with a preceding article.
“Further, examination of an original print of the Projet of 1825, now in the possession of Tulane Law Library shows that the two articles were considered together to be an ‘Amendment to Article 138’ of the Code of 1808. Certainly this indicates a deliberate *850 consideration of the exception as to ‘stolen money’ by Livingston, Derbigny and Lislet rather than a ‘mistake’ by the jurisconsults.
“The position of the defendants and the ruling of the Trial Judge would, if supported by this Court, completely invalidate Article 2139. Plaintiff submits that such a result would do violence not only to the plain and unambiguous text of this article but also would be contrary to both the jurisprudence and those code articles which deal with the legal interpretation of our statutes and laws. The entire Chapter 4 of the Code on the application and construction of laws is pertinent in the interpretation of Article 2139 and leaves little doubt but that the Courts of this State should not disregard the plain text of a law. Further the Supreme Court in Chappuis v. Reggie [1952, 222 La. 35], 62 So.2d 92, at page 95 has held:
“ ‘The uniform jurisprudence is to the effect that all statutory provisions are to be given effect whenever possible. LSA — Civil Code of Louisiana, Art. 17: State v. Texas Co., 205 La. 417, 17 So.2d 569; Town of Abbeville v. Police Jury, 207 La. 779, 22 So.2d 62; Melancon v. Mizell, 216 La. 711, 44 So.2d 826. If acts can be reconciled by a fair and reasonable interpretation, it must be done, since the repeal of a statute by implication is not favored and will not be indulged if there is any other reasonable construction. Town of Abbeville v. Police Jury, supra; State v. Standard Oil Co. of La., 188 La. 978, 1054, 178 So. 601; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11; State v. Jones, 220 La. 381, 56 So.2d 724. Moreover, where two acts relating to the same subject are passed at the same legislative session, there is a strong presumption against implied repeal and they are to be construed together, if possible, so as to reconcile them, giving effect to each. State v. Shushan, 206 La. 415, 19 So.2d 185; City of New Orleans v. Board of Supervisors of Elections, 216 La. 116, 43 So.2d 237. In the latter case this court quoted with approval the following language: “Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws * * *. These rules are particularly applicable to statutes passed at or about the same time or at the same session of the legislature, since it is not to be presumed that the same body of men would pass conflicting and incongruous acts.” 216 La. at pages 144-145, 43 So.2d at page 246.”
Therefore, if there is any conflict of interpretation in Articles 2138 and 2139 the clear mandate contained in Article 2139 must prevail for the reasons shown in the above quotation from counsel’s brief, and we are compelled to apply it.
It is the duty of the court to endeavor to give effect to both articles rather than to select one over the other and say only one of these two articles, can. be enforced. To that end there is at least a semblance of plausibility in the thought that the provisions of Article 2138 are dealing with things and money in kind. There could exist a situation where the lawful owner could actually identify the thing or the very identical pieces of money before such thing or money has been used or disposed of and his ownership could form the basis of a conservatory writ to prevent the use or disposition of the thing or money pending his suit to recover them. If such thing or money cannot be identified and arrested in kind before being consumed in use then there is no way to recover them in kind. Moreover, it is plausible to say that this article does not contemplate that the commission of a felony as such is the only cause which gives the debtor “no right to deliver” the thing or money in payment. On the other hand, article 2139 says squarely that if the money or other property given in payment be stolen then the owner may recover “the amount” paid. We must take *851 the law as we find it. Article 2139 deals with recovery of the amount or value of the owner’s claim rather than recovery of the identical thing or money in specie under Article 2138. Also, under Article 2138 there may be some reason other than theft why the debtor has no right to use the thing or money of another to make payment of his own debt. Under Article 2139 if the debtor has stolen the money or property used in payment then the owner can recover the amount or value of it from the creditor.
Counsel for defendants cited such common law authorities as 36 Am.Jur. p. 460, Sec. 6; 40 Am.Jur. p. 747, Sec. 49; 114 A.L.R. 382; 58 C.J.S. Money Received § 13, p. 923, where it is reported that the weight of authority that money paid in due course of business for valuable consideration and received in good faith cannot be recovered by the person from whom the money was stolen by the debtor. Counsel does not refer to the law of any state that would be comparable to Article 2139 of our Code and such jurisprudence does not control in the light of a positive contrary provision of Louisiana law on the subject at issue. Counsel for defendants also rely heavily on the decision in First National Bank of Birmingham, Ala. v. Gibert & Clay, 123 La. 845, 49 So. 593, 25 L.R.A., N.S., 631. In that case defendants, Gibert and Clay, were cotton brokers. The bank paying teller, Chisholm, engaged in extensive gambling speculation in cotton futures bought on margin in the name of S. M. Webster who Chisholm said was a depositor in the bank and whom he claimed to represent as agent. It is not clear whether Webster was a fictitious name or that Chisholm did represent a person by that name. The court in that case said that made no difference. If there was no such person as Webster, and Chisholm had no withdrawals by Webster on his account, then Chisholm, as paying teller, lifted $97,-550 in cash in various smaller amounts at different times to pay his losses on current contracts, and the bank sued for the amount, less $45,550 which Chisholm had returned. The basis of that suit was plaintiff’s allegations that the defendants well knew that Chisholm was paid only a small salary of $2,000 a year and was in poor financial circumstances; that defendants induced him to make the purchases and knew that the money which he paid belonged to the bank. The court held that these allegations were not proven, and said the bank itself had not exercised due diligence. The authority in that decision for judgment against the plaintiff was an Illinois case in which the facts were closely similar where the Illinois court held that bad faith alone will defeat the right of the taker. Counsel for defendants here maintain that the First National Bank case decided by our Supreme Court in 1909 settles definitely and beyond question in this state the issue here presented. It requires only a cursory reading-of that decision to find that, regardless of whose money it was, Chisholm did not use it to pay his own preexisting debt but paid it out over the paying teller’s counter at the bank to cover current gambling contracts, and further that the Court in that case did not discuss nor refer to and evidently did not consider the provisions of Article 2139 of our Civil Code LSA. Counsel for defendants contend that the plaintiff in the cases now before us placed Ophelia Johnson in position to steal the money by according to her the position of a wife with the right of access to the contents of the home. We cannot agree with that premise; for one thing, she did not have access to the cedar robe. Of course, one might say that plaintiff should not have kept that money in cash. We cannot deny that, he had a legal right to do so. A statement in one of plaintiff’s exhibits refers to some disastrous experience the plaintiff at one time had when his bank deposit had been frozen, and that is given as the reason for not putting the money on deposit. He must have thought it safe in his home under lock with the key in his pocket. The money was stolen, and under the facts of these cases, we think he should *852 recover from defendants the amounts of those payments made by Sam Davis.
Counsel for defendants also rely upon our negotiable instruments law on the theory that United States currency is nothing more nor less than negotiable instruments. Counsel assert that currency is the “essence of all negotiable instruments”. We do not believe currency contains all the essence of a negotiable instrument under our law. We think United States currency is the object for which negotiable instruments issue. The very first requirement of our negotiable instrument law is that the instrument must be signed by the maker. The signatures on paper money are made by facsimile stamp, put there apparently by machinery. The adoption of the NIL has not in effect repealed Article 2139 of the Civil Code, LSA.
For these reasons the judgment in the case numbered and entitled first above is reversed and annulled.
Judgment is now rendered in favor of the plaintiff, Ernest Crawford and against the defendant, Alatex Construction Service, Inc., in the full sum of $300 with legal interest from date of judicial demand and for all costs.
Reversed.
REGAN, J., absent.