PRESTON H. HUFFT, Judge Pro Tem.
Plaintiff appeals from a decision of the lower court which rejected a claim of restitution against the depositary of a minor’s funds depleted by the minor’s fiduciary. We affirm.
Appellant presented the following issues:
(1) Whether the court erred in dismissing the claim against the bank in reliance upon LSA-R.S. 6:766;
(2) Whether the court erred in dismissing the claim against the bank in reliance upon LSA-R.S. 9:735 et seq., the Uniform Gifts to Minors Act;
(3) Whether the court erred in dismissing the claim against the bank because of a determination that LSA-R.S. 9:738 evidences a “legislative intent to provide the legislation for exemptions from the requirement contained in Code of Civil Procedure Articles 40-70”; and
(4) Whether the court erred in completely ignoring or overlooking the Uniform Fiduciaries Act, LSA-R.S. 9:3801 et seq., and the cases relying thereon.
By judgment rendered on September 5, 1975, Delois Railey Mitchell, natural tutrix of her minor daughter, Angela Marie Mitchell, received authority to compromise and settle her daughter’s claim for damages pursuant to a tort action.[1] The judgment allowed settlement in the amount of Eighty-Five Thousand Nine Hundred & 00/100 Dollars ($85,900.00). The judgment required that the net proceeds be deposited in a local homestead and that no withdrawal of funds occur without first obtaining authority of the Civil District Court For The Parish of Orleans.
Ms. Mitchell and her attorney, on the day of the judgment, opened two accounts with First Homestead, now First Financial Bank. One account related to a Certificate of Deposit (“C.D.”) in the principal amount of $40,000.00; the other account, a pass book savings account, was funded with $7,500.00. (The difference between $85,900 and $47,500, presumably the attorney’s fees and costs, is not at issue). The depletion of the funds deposited in the savings account is not at issue. When the accounts were opened, the bank did not receive a copy of the judgment from the attorney or Ms. Mitchell, nor, apparently, did the bank subsequently receive any such copy during the applicable period. The initial signature card for the accounts, dated September 25, 1975, is titled “Delois Mitchel for the use of *171 her minor daughter Angela Mitchell.” On January 26,1978, the bank issued a second signature card for the C.D. account entitled “Delois Mitchell, Trustee for Angela Mitchell (Minor) Beneficiary.” A few months later, on April 14, 1978, the bank issued a third signature card for a “change of name” for the account which was entitled “Delois Mitchell, Administrator for the Estate of Angela Mitchell (minor).” The record does not indicate why the bank twice changed the name of the account.
Ms. Mitchell withdrew funds from the pass book savings account for living expenses. When the funds in the pass book were depleted, Ms. Mitchell borrowed money from the bank and secured the loans with the C.D. apparently for personal expenses shared with Angela, such as rent, food, and transportation, as well as expenses solely for Angela, such as medical. The bank personnel suggested to Delois Mitchell, just as they did to other C.D. depositors in need of funds, that borrowing money secured by the C.D. would be preferable to liquidating the C.D. The record shows that the interest expense (approximately $500) attributable to a loan in this manner was much less than the penalty (approximately $3000) that would have been imposed upon a premature withdrawal of funds from the account represented by the C.D. Borrowing in this manner began after issuance of the C.D. with a name change on January 26, 1978. The initial C.D. matured after four years and automatically “rolled over” into a new C.D.
On June 9, 1981, Delois Mitchell filed a petition in bankruptcy. She was discharged on October 10, 1981. She did not list the C.D. as an asset, although she did list the various debts to the bank, secured by the C.D., on the schedule filed with the bankruptcy court. On March 19, 1982, five months after the discharge in bankruptcy, the bank appropriated the pledged C.D. to satisfy partially the debts owed.
The undertutor of Angela Marie Mitchell brought this action in order to restore such funds to the child’s account. Plaintiff contends that the bank as drawee and payee knew or should have reasonably known that Delois Mitchell used funds over which she had control as a fiduciary to secure her personal debts such that the depositary should be held accountable as provided under the Uniform Fiduciaries Act (R.S. 9:3801 et seq.). The bank replies that it had no knowledge of restrictions placed upon the fiduciary’s use of funds on deposit and that the form by which the fiduciary withdrew or depleted funds, borrowing and securing with the principal’s C.D. rather than direct withdrawal which would result in premature termination penalties, should not make a difference.
We agree with the trial court’s disposition of this case in favor of the bank.
The trial court determined that LSA-R.S. 6:766 and R.S. 9:738 evidence a legislative intent to provide exemptions from the requirements for dealing with a minor’s property contained in La.C.C.P. art. 4270. The bank contends that the relevant portion of the Louisiana Savings and Loan Association Law [LSA-R.S. 6:701 et seq. ] is Section 766 A(l), which states in pertinent part:
“Any association may accept savings accounts or issue shares in the name of the administrator, executor, custodian, conservator, tutor, trustee, or other fiduciary for named beneficiary or beneficiaries and the shares or savings accounts shall constitute legal investment for such funds. The association is not liable to beneficiaries, wards, or principals for monies paid to their fiduciaries on account of such shares or savings accounts.... The payment or delivery to any such fiduciary or a receipt or acquittance signed by any such fiduciary to whom any such payment or any such delivery of rights is made shall be a valid and sufficient release and discharge of an association for the payment or delivery so made.” [Emphasis added]:
Properly speaking, the statute cited by the bank does not actually dispose of the issue because the applicable period ended prior to enactment of R.S. 6:766 by Acts 1983, No. 675, Section 1. However, identical and controlling language appears in pri- or law: R.S. 6:768, enacted by Acts 1970, *172 No. 234, Section 1 (Homestead And Savings And Loan Recodification), re-enacted by Acts 1983, No. 675, Section 1, as R.S. 6:766.
The former statute is dispositive of the facts presented. The appellant argues that, strictly speaking, the statute does not apply because the bank and fiduciary used the share loan procedure which does not comply with the provision of (i) payment or delivery and (ii) receipt or acquittance. The appellee counters by suggesting that the share loan procedure allowed withdrawal as provided under the statute while preventing assessment of a penalty for premature termination of the C.D. Under the facts presented, the share loan procedure used by the parties may be deemed to comply with the requirements of (i) payment or delivery and (ii) receipt or acquittance under former LSA-R.S. 6:768.
The second issue raised, the applicability of the Uniform Gifts To Minors Act, does not require a lengthy address. Although cited by the trial court as a basis for its decision, the bank itself concedes that said Act does not apply but only serves as support by exemplifying the legislature’s intent to allow dealing with a minor’s property under certain circumstances when parties may not need to follow certain requirements, such as La.C.C.P. arts. 4262-4275.
The third issue raised, whether the court erred in dismissing the claim against the bank by finding that LSA-R.S. 9:738 evidences a legislative intent to provide legislation for exemption from the requirement contained in La.C.C.P. art. 40 to 70, arises from what appears to be a transcription error in the reasons assigned for judgment. The appellant’s brief points out that the reference in the assigned reasons to La.C. C.P. arts. 40 to 70 (dealing with venue), does not respond to any issue raised in the proceedings. The appellee’s brief indicates, however, that an error apparently occurred in transcribing the judge’s dictation: the words “40 to 70” appear to have been written by mistake when the reporter heard the trial judge say “4270.” La.C. C.P. art. 4270 is the general article dealing with investment of a minor’s funds. La.C. C.P. art. 4261 provides for maintenance of a minor with the income from the principal of his property and requires that the tutor comply with the provisions of La.C.C.P. art. 4271 if the principal must be invaded for the minor’s support or education. However, the statute expressive of the legislative intent dispositive of this case is not LSA-R.S. 9:738 but former LSA-R.S. 6:768 (enacted by Acts 1970, No. 234, Section 1, re-enacted by Acts 1983, No. 675, Section 1, as LSA-R.S. 6:766). Moveover, caution should be used in interpreting the legislative intent of a statute. For the purposes of this case, one may confidently say that former LSA-R.S. 6:768 expressed the legislative intent that a depositary should not bear any responsibility or liability to a minor whose fiduciary deals with the minor’s funds as provided under such statute. In other words, the bank need not require proof from the fiduciary that he has complied with the laws governing fiduciaries, such as La.C.C.P. art. 4270. Whether former LSA-R.S. 6:768 expressed a legislative intent to allow a fiduciary not to comply with La.C.C.P. 4270 is another matter and not at issue here. Accordingly, the trial court’s result is correct when reference in the assigned reasons to LSA-R.S. 6:766 and 9:735 through 742, particularly 9:738, is understood to mean former LSA-R.S. 6:768 and is qualified according to the analysis contained in this paragraph.
The fourth issue raised by the appellant is whether the trial court erred in completely ignoring or overlooking the application of the Uniform Fiduciaries Act, LSA-R.S. 9:3801 et seq. The appellant’s counsel makes a strong argument for disposition of this case in favor of plaintiff-appellant, but such argument fails upon application of the facts presented. The loan and security procedure used by the bank and fiduciary effected a withdrawal of funds from the account represented by the certificate of deposit, a withdrawal sanctioned by former LSA-R.S. 6:768, while enabling the principal to avoid the penalty imposed upon a premature termination of the C.D. Our review of the record fails to reveal any fact that suggests former LSA-R.S. 6:768 should not control or that requires application of LSA-R.S. 9:3801 et seq. (enacted by Acts 1924, No. 226).
*173 Appellant’s counsel cites the following as applicable, controlling and requiring reversal of the trial court’s decision: LSA-R.S. 9:3801, 3807, 3808, and 3809, and Edwins v. Lilly, 422 So.2d 1217 (La.App. 1st Cir., 1982); Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358 (La.App. 3rd Cir., 1982); Maryland Casualty Company v. Bank of Charlotte, 340 F.2d 550, 554 (4th Cir., 1965); Guaranty Bank & Trust Co. of Alexandria v. C & E Development Co., 258 So.2d 543 (La., 1972); Lilliedahl & Mitchell, Inc. v. Avoyelles Trust & Savings Bank, 352 So.2d 781 (La.App. 3rd Cir., 1977); and Roney v. Peyton, 159 So. 469 (La.App. 2nd Cir., 1935).
The statutes cited fall within the Uniform Fiduciaries Act; the cited cases relate to actions against a depositary when a fiduciary-confused his personal affairs with those of his principal, invariably a business entity. The affairs of principal and fiduciary in those cases could be readily classified and defined as such by the depositary. Moreover, the facts of these cases are particularly compelling. In Edwins, a bank employee acted in collusion with the fiduciary. In Lilliedahl, the bank paid off corporate C.D.s with checks payable in the name of the principal’s president. In Par-gas, Inc., a corporate manager endorsed checks payable to the corporation and deposited these into his personal accounts. These acts appear particularly egregious and violative of maintenance of the separate identities of principal and fiduciary.
The case at bar relates to a parent-child relationship where the separate interests of principal and fiduciary may be easily confused or may be thought to be synonymous when the child depends upon the mother and there is no affirmative notice to the bank to the contrary. The record does not reflect any evidence that the bank had notice that the fiduciary account should be restricted and that the normal practice sanctioned by former LSA-R.S. 6:768 would not apply. The “loans” to the fiduciary by the bank accomplished a withdrawal of funds by the fiduciary. A true loan situation, where the fiduciary clearly has distinct personal debts and attempts to secure these with the principal’s property, did not arise from the bank s point of view. We wish to emphasize that our decision should be limited to the facts of this case and should not be construed to mean that LSA-R.S. 6:766 is a safeharbor from the requirements of the Uniform Fiduciaries Act under all circumstances. The substantive, known facts of the case fit squarely under former LSA-R.S. 6:768, now R.S. 6:766, which controls. The procedure of the loan and security used to effect withdrawals should not cause a contrary result by application of LSA-R.S. 9:3801 et seq.
The fiduciary had an obligation to apply for and receive permission from the Civil District Court For The Parish Of Orleans to withdraw funds from the minor’s account, but failed to do so. The depositary bank did not know of the restrictions placed upon the fiduciary. Nothing in the record establishes that the bank had received notice of such restrictions. The bank had a right to rely upon former LSA-R.S. 6:768 and to use whatever reasonable procedure that might accomplish the effect of a withdrawal sanctioned by such statute.
For the reasons set forth above, we find that former LSA-R.S. 6:768 controls the facts presented and that such facts do not give rise to circumstances requiring disposition of this case under LSA-R.S. 9:3801 et seq.
Costs to appellant.
Judgment affirmed.

. “Delois Railey, divorced wife of William Mitchell, Jr., individually and on behalf of her minor daughter, Angela Marie Mitchell v. Dieter M. Hugel, Gulf Coast Marine, Inc. and Employers Commercial Union Insurance Co., No. 570-086, Division A, Docket No. 4, Civil District Court For The Parish of Orleans, State of Louisiana.”