WATSON, Justice.
When settlement of a minor’s claims for personal injuries was approved, the judgment required deposit of the net proceeds in a homestead and court permission for all withdrawals. Claiming ignorance of the terms of the judgment, the homestead association, now a bank, placed the minor’s funds in a “special savings certificate”; loaned money to the minor’s tutrix individually, using the savings certificate as collateral; and then seized the minor’s savings to satisfy the debt of the bankrupt tutrix. This litigation to recover the minor’s funds from the bank was initiated by her Under-tutor.
FACTS
Attorney Peter J. Abadie, Jr., handled a tort claim involving personal injuries to a minor, Angela Marie Mitchell. The trial court granted the petition of Delois Railey Mitchell, mother and natural tutrix of . the *765 minor, to compromise the claim for $85,900 and to execute a release for that sum. It was also ordered that:
“The net proceeds from this settlement will be deposited in a Metropolitan New Orleans Homestead and the funds may be withdrawn only upon approval by a Judge of this Court.”
After this judgment was rendered on September 5,1975, a savings certificate for $40,000 was purchased from First Homestead and Savings Association on September 25. The certificate was issued to: “De-lois Mitchell for the use of her minor daughter Angela Mitchell.” Prior to the certificate’s maturity date, September 25, 1979, two other savings certificates were successively substituted for the original. The only explanation for this procedure is a bank document noting “change of name”. The second certificate was issued to: “De-lois Mitchell, Trustee for Angela Mitchell (Minor) Beneficiary.” A third certificate was made payable to “Delois Mitchell, Administrator for the estate of Angela Mitchell (minor)”.
Neither attorney Abadie, who had accompanied Delois Mitchell when they purchased the $40,000 savings certificate, nor Patricia T. Thames, who handled the transaction for the Association, had any “independent recollection”[1] of what transpired. Thames, now a branch manager of the bank, knew she opened the account only because she recognized her signature; she was not involved with the substituted certificates or the loans to Delois Mitchell. Abadie would normally have taken a copy of the judgment with him, and Thames’ normal procedure would have been to indicate any restriction on withdrawals. Another account was established at the same time for $7,545.43. The smaller account allowed unlimited withdrawals without penalty, whereas the $40,000 certificate of deposit had a substantial penalty for any withdrawal before expiration of its 48 month term.
The tutrix, Delois Mitchell, testified that the judge had instructed her in chambers that she could not use the money without his written permission. She did not remember Abadie carrying a copy of the judgment when they went to the homestead, but she thought he told the woman there that he would send her a copy. According to Delois Mitchell’s recollection, Abadie orally instructed the woman at the homestead that the $40,000 was to be put in a savings certificate and could not be used without court permission.[2]
On September 6, 1978, and October 3, 1978, Ms. Mitchell borrowed money from the Association signing her name individually on two promissory notes. She testified that she thought the interest on the savings deposit would pay off her loans.
According to Marla Kidd, vice-president of cost services for First Financial Bank,[3] the loan procedure saved Delois Mitchell $2,599.56, because of the penalty for any early withdrawal from the savings certificate. Marla Kidd admitted that the two notes were signed by Delois Mitchell individually and not in a fiduciary capacity.
On October 1, 1981, Delois R. Mitchell was discharged in bankruptcy in the federal court for the Eastern District of Louisiana. Listed in her statement of financial affairs in the bankruptcy proceeding was a suit on a promissory note by First Homestead and Savings Association in Orleans Civil District Court. The only security noted for First Homestead was a chattel mortgage.
On March 19,1982, $39,352 was transferred by the association from account number 500493, certificate number 57 (the savings certificate), to account number 10076, *766 the account of Delois Mitchell, to close out her combined loans. The conversion of Angela Mitchell s funds was done by an internal memorandum as follows:
[[Image here]]
In 1984, the undertutor filed this suit for an accounting from the tutrix and First Homestead Savings and Loan Association, now First Financial Bank. The petition by the undertutor for restitution of the minor’s property alleged that First Financial Bank used the certificate of deposit purchased for the minor to secure loans to Delois Mitchell, contrary to the explicit instructions in the judgment; and that the certificate of deposit w,as illegally seized to satisfy the debt of Delois Mitchell despite the fact that her debt had been disclaimed in bankruptcy.
The trial court ordered Delois Mitchell to file an annual accounting but dismissed the claim against First Financial Bank on the basis of LSA-R.S. 9:738.[4] Prior to its 1983 amendment, that statute allowed the custodian of gifts made to minors absolute investment discretion.
The court of appeal affirmed[5] the trial court on the basis of LSA-R.S. 6:768,[6] which recodified the laws relating to homesteads and building and loan associations and provided in pertinent part:
“... The association is not liable to beneficiaries, wards, or principals for moneys paid to their fiduciaries on account of such shares or savings accounts. Any such fiduciary shall have power ... to withdraw any such savings in whole or in part. The withdrawal value of any such savings, and earnings thereon, or other rights relating thereto may be paid or delivered, in whole or in part, to such fiduciary without regard to any notice to the contrary as long as such fiduciary is living. The payment or delivery to any such fiduciary or a receipt or acquittance signed by any such fiduciary to whom any such payment or any such delivery of rights is made shall be a valid and sufficient release and discharge of an association for the payment or delivery so made_”[7]
*767 A writ was granted to review the judgment of the court of appeal.[8]
LAW
LSA-R.S. 9:738, relied on by the trial court, applies only to funds given to minors, i.e., “gifts”. It is not relevant here where the funds were acquired as restitution for personal injuries.
The Undertutor relies on the Uniform Fiduciaries Law, which has been adopted in approximately one-half of the fifty states. It is found at LSA-R.S. 9:3801 through 9:3814 and covers relationships between fiduciaries and banks. The Uniform Fiduciaries Law provides in LSA-R.S. 9:3804[9] that if an instrument is transferred by a fiduciary to pay for or secure a personal debt of the fiduciary to the actual notice of the creditor “or is transferred in any transaction known by the transferee to be for the personal benefit of the fiduciary, the creditor or other transferee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in transferring the instrument.”
The Uniform Fiduciaries Law defines a “Bank” as “any person or association of persons, whether incorporated or not, carrying on the business of banking.” LSA-R.S. 9:3801(1). According to Professor Harriet S. Daggett’s “Comments”: “(t)he reader is remitted to comments by reporters on Banks and Banking, R.S. 6:1— 6:895. A detailed analysis here would be redundant and repetitious.” Banking is statutorily defined as “lending money and either receiving deposits or paying checks anywhere within this state.” LSA-R.S. 6:2(2).
Professor Daggett also notes in her comments that the Uniform Fiduciaries Law was intended to coordinate in compact form various statutes covering guardians and others in fiduciary capacities.
LSA-R.S. 6:766A(4), formerly LSA-R.S. 6:768, relieves both homesteads and savings and loan associations from liability to a beneficiary when there is payment, delivery, receipt, or acquittance by a fiduciary.
A very similar case is Anacostia Bank v. United States Fidelity & Guar. Co., 119 F.2d 455, 73 D.C.App. 388 (1941). The guardian mother deposited a minor’s funds, borrowed money for her own use and then endorsed a check issued to her as guardian to repay the personal loan. Because of the bank’s knowledge that the mother repaid her personal loan with the minor’s funds, the bank was liable for its breach of trust. Also see Downey v. Duquesne City Bank, 146 Pa.Super. 289, 22 A.2d 124 (1941) and Pennsylvania Co., Etc. v. Ninth Bank & Trust Co., 306 Pa. 148, 158 A. 251 (1932).
Trenton Trust Co. v. Western Sur. Co., 599 S.W.2d 481 (Mo.1980) held that a bank which allowed fiduciary funds to be used to secure a personal obligation of the fiduciary-mother was in bad faith and liable to the beneficiaries.
The general rule in the United States is in accord with the cited cases and the Uniform Fiduciaries Law. When a financial institution transfers trust funds from a fiduciary account to a personal account, the knowing diversion of trust funds creates liability to the beneficiaries. See, for example: Schofield v. Cleveland Trust Co., 149 Ohio St. 133, 78 N.E.2d 167 (1948); *768 Maryland Casualty Company v. Bank of Charlotte, 340 F.2d 550 (4 Cir.1965) and Peoples Nat. Bank v. Guier, 284 Ky. 702, 145 S.W.2d 1042 (1940).
CONCLUSION
In making its loans to Ms. Mitchell, the First Homestead and Savings Association was engaged in the business of banking and is therefore covered by the Uniform Fiduciaries Law. See LSA-R.S. 9:3801.
There is no explicit evidence that the Association ever had notice of the court’s restriction on Angela’s savings certificate. However, the initial transaction and, in particular, the wording of the last two certificates show clear knowledge by the Association that the certificate was the property of the minor. Allowing a pledge to secure personal loans to the fiduciary establishes bad faith under LSA-R.S. 9:3802. See Comment, 9 Tulane L.Rev. 618 (1935) and Trenton Trust Co., supra.
Marla Kidd, the Bank’s employee, admitted that the loans to Delois Mitchell were made to her individually. Ms. Mitchell’s signature on the two notes was not qualified. There is no indication that she borrowed the money in a fiduciary capacity. Thus, the Association had “actual knowledge” that these were personal debts of fiduciary Mitchell. Under LSA-R.S. 9:3804, First Financial Bank is liable to her principal, beneficiary Angela.
Even if the defendant were not engaged in banking and therefore not subject to the Uniform Fiduciaries Law, it could not prevail. The record does not show that the institution ever paid or delivered to Delois Mitchell the funds belonging to Angela Mitchell. On March 19, 1982, the institution simply transferred and appropriated the money belonging to Angela Mitchell by an internal memorandum. Further, no receipt or acquittance was obtained from Delois Mitchell. The court of appeal erred in finding that the bank was not liable under LSA-R.S. 6:768. The fiduciary received no payment and gave no receipt or acquittance when the funds were transferred. Compare First National Bank of Jefferson Parish v. Carmouche, 515 So.2d 785 (La.1987).
The question of whether the debt was discharged in bankruptcy is pretermitted.[10]
DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed.
Judgment is rendered in favor of the minor, Angela Marie Mitchell, through her Undertutor, James B. Halley, and against First Financial Bank for the sum of Forty Thousand and No/100 ($40,000) Dollars, together with interest as provided by the savings certificate until paid; all costs to be paid by First Financial Bank.
REVERSED AND RENDERED.
APPENDIX A
Prior to 1983, LSA-R.S. 9:738 provided: “A. The custodian shall hold, manage, invest and reinvest the property held by him as custodian, including any unex-pended income therefrom, as hereinafter provided. He shall collect the income therefrom and apply so much or the whole thereof and so much or the whole of the other property held by him as custodian as he may deem advisable for the support, maintenance, education and general use and benefit of the minor, in such manner, at such time or times, and *769 to such extent as the custodian in his absolute discretion may deem suitable and proper, without court order, without regard to the duty of any person to support the minor and without regard to any other funds which may be applicable or available for the purpose. To the extent that property held by the custodian and the income thereof are not so expended, it shall be delivered or paid over to the minor upon the minor’s attaining the age of twenty-one, or being relieved from the time prescribed by law for attaining the age of majority pursuant to the provisions of the revised civil code of the State of Louisiana, and in the event that the minor dies before attaining the age of twenty-one, it shall thereupon be delivered or paid over to the estate of the minor.
“B. The custodian may, without court order, sell, exchange, convert, or surrender or otherwise dispose of any and all of the custodial property held by him in such manner and at such time, for such prices and upon such terms as he may deem advisable; he shall have the power in his sole and absolute discretion to retain any and all securities delivered to him within the meaning and under the authority of R.S. 9:735 through 9:742, without reference to the statutes relating to permissible investment by fiduciaries; he shall invest the minor’s property in such securities as would be acquired by prudent men of discretion and intelligence who are seeking a reasonable income and the preservation of their capital without reference to the statutes relating to permissible investments by fidu-ciaires or hold part or all of the same in one or more bank accounts in his name as such custodian; he may vote in person or by general or limited proxy with respect to any securities held by him; he may consent directly or through a committee or other agent to the reorganization, consolidation, dissolution, or liquidation of any corporations the securities of which may be held by him, or to the sale, lease, pledge or mortgage of any property by or to any such corporation.
“C. In addition to the foregoing rights, powers and duties with respect to any securities or other property held by the custodian, the custodian, in his name as such custodian, shall have all the powers or management which a tutor of the minor would have.
“D. The custodian may execute and deliver any and all instruments in writing which he may deem advisable to carry out any of the foregoing powers. No issuer of securities, transfer agent, registrar or bank or other person acting on the instruction of any person purporting to be a custodian or donor shall be responsible for determining whether any person has been duly designated as a custodian under R.S. 9:735 through 9:742, or whether any purchase, sale, transfer or surrender to or by any person as custodian is in accordance with or authorized thereby, or shall be obliged to inquire into the validity of any instrument or instructions executed or given by a person purporting to act as custodian or donor, or be bound to see to the application by any person purporting to act as custodian of any money or other property paid or delivered to him. All registered securities held by the custodian from time to time shall be registered in his name followed by the words ‘as custodian for_, a minor (Name of Minor) under the Louisiana Gifts to Minors Act.’ All other property held by the custodian for the minor under the authority of R.S. 9:735 through R.S. 9:742, shall be kept separate and distinct from the custodian’s own personal funds and property and shall be maintained in this manner at all times, so as to identify it clearly as the property of the minor.
“E. If the subject of the gift is a life insurance policy or annuity contract, the custodian, in his capacity as custodian, has all the incidents of ownership in the policy or contract to the same extent as if he were the owner, except that the designated beneficiary of any policy or contract on the life of the minor shall be the minor’s estate and the designated beneficiary of any policy or contract on *770 the life of a person other than the minor shall be the custodian as custodian for the minor for whom he is acting; and may pay premiums on the policy or contract out of the custodial property.”

. Abadie: Tr. 10; Thames: Tr., pp. 58, 61, 63, 69 and 75.

. The occasion, routine to both Abadie and Thames, was undoubtedly a significant one for Delois Mitchell.

.The successor institution to First Homestead and Savings Association.

. See Appendix A attached.

. 506 So.2d 169 (La.App. 4 Cir.1987).

. LSA-R.S. 6:768, enacted by Act 234 of 1970, was reenacted by Act 675 of 1983 as LSA-R.S. 6:766.

. The gist of this provision is now found in Section A(4) of LSA-R.S. 6:766:
"(4) The payment or delivery to any such beneficiary, beneficiaries, or designated person, or a receipt or acquittance signed by any such beneficiary, beneficiaries or designated person for any such payment or delivery shall be a valid and sufficient release and discharge of an association for the payment or delivery so made. No association paying any such fiduciary, beneficiary, or designated person in accordance with the provisions of this Section shall thereby be liable for any estate, inheritance, or succession taxes which may be due this state.”

. 512 So.2d 446 (La.1987).

. LSA-R.S. 9:3804 provides:
"If any negotiable instrument payable or endorsed to a fiduciary as such is endorsed by the fiduciary, or if any negotiable instrument payable or endorsed to his principal is endorsed by a fiduciary empowered to endorse such instrument, on behalf of his principal, the endorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in endorsing or delivering the instrument and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is transferred by the fiduciary in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is transferred in any transaction known by the transferee to be for the personal benefit of the fiduciary, the creditor or other transferee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in transferring the instrument.”

. First Financial Bank filed a motion to remand the case for inclusion of the original exhibits on December 17, 1987. The motion was referred to the merits. Since the record contains almost illegible photocopies, this court has endeavored to obtain the original exhibits since the case was submitted on December 1, 1987. The exhibits are unavailable, apparently lost or misappropriated. A remand would be pointless.
Moreover, the record establishes beyond any doubt that: (1) the loans were made to Delois Mitchell individually (Tr., pp. 41, 43, 94, and 102); and (2) the bank did not receive a signed receipt when the funds were transferred on March 19, 1982, and merely took over the minor’s funds. "... the bank appropriated the pledged C.D. to satisfy partially the debts owed.” 506 So.2d 169 at 171 (La.App. 4 Cir.1987). The bank conceded in its brief that the facts set out in the court of appeal opinion are correct.