**AETNA CASUALTY & SURETY COMPANY**

v.

**James W. GRAVES et al., Whitney National Bank and First National Bank of Commerce, Garnishees.**

**Civ. A. No. 74–21.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Nov. 18, 1976.

Henry B. Bruser, UUU, Gold, Hall, Hammill & Little, Alexandria, La., for plaintiff.

James W. Graves, pro se.

Lloyd F. Love, Ferriday, La., for Purser Raburn.

Roy S. Halcomb, Halcomb & Cole, Ferriday, La., for United Furniture.

John M. Sturgeon, Jr., Sturgeon & Gore, Ferriday, La., for M. P. Brann.

William Charles Bradley, Baker, La., for Baker Bank & Trust.

Donnie L. Ellerman, Winnsboro, La., for William Baker.

George L. Wax, Dart & Dart, New Orleans, La., for First Nat. Bank of Commerce.

Walter J. Suthon, III, Monroe & Lemann, New Orleans, La., for Whitney Nat. Bank.

DAWKINS, Senior District Judge:

## RULING

Aetna Casualty & Surety Company (hereinafter plaintiff or Aetna) as subrogee of the Federal Deposit Insurance Corporation (FDIC) and Delta Security Bank & Trust Company of Ferriday, Louisiana, here sues numerous defendants to recover payment of a claim by FDIC on a banker's blanket bond insuring Delta for losses arising out of employee theft.

In January, 1973, an audit by FDIC and the Commissioner of Financial Institutions of the State of Louisiana revealed theft of a most substantial amount of funds by James W. Graves, the Bank's cashier and executive vice-president. He converted Bank money to his private use in various ways. The State District Court in Concordia Parish ordered Delta to close its doors, and FDIC took possession of the Bank's assets on January 19, 1973. When the Bank's losses were confirmed as being employee thefts, Aetna paid FDIC the amount it claimed on October 3, 1973, and became subrogated to the Bank's and FDIC's rights and claims to recover the stolen funds.

Plaintiff was granted a default judgment by us against Sherill A. Graves (former wife of James W. Graves), Delora H. Graves (wife of James W. Graves), and James W. Graves on January 20, 1975. Thereafter, on November 10, 1975, plaintiff was awarded a default judgment against William Ross Phillips, Sr., and William Ross Phillips, Jr., (co-conspirators in Graves's scheme to convert the Bank's funds). On the latter date, all remaining parties agreed to stipulate the evidence as to unresolved issues presently before us. These were taken under advisement on briefs subsequently to be filed.

Jurisdiction is based upon 28 U.S.C. § 1332, there being complete diversity of citizenship between all parties plaintiff and defendant, and the amount in controversy exceeding $10,000. Venue also properly is laid under 28 U.S.C. § 1391 since the transactions concerning the Bank originated in Concordia Parish within the Monroe Division of this District.

### I.

Graves issued his personal checks for pre-existing debts to the following defendants: United Furniture Company of Ferriday, Inc.; M. P. Brann; William Baker; and Purser Raburn. They were drawn on Graves's personal account at the Bank, and there was no evidence reasonably to indicate that these defendants' should have known Graves had inadequate funds to cover the checks. As an executive officer and cashier of the Bank, Graves was able to transfer Bank funds into his personal account thus temporarily concealing his theft.

These defendants correctly urge that agency principles are not applicable to Graves's personal checks. The checks gave no glimmer of actual or implied authority to release anyone's funds other than his own. The mere fact that Graves was a bank officer and cashier, standing alone, is not sufficient for us to find that defendants were in bad faith or had actual or constructive notice that Graves might convert Bank funds to his own personal use.

Plaintiff further argues that it should be allowed to recover the stolen funds under

La.Revised Civil Code of 1870, article 2139.[1] Graves paid his debts with the checks, not with currency. In *Crawford v. Alatex Construction Service, Inc.,* La.App., 120 So.2d 845, aff'd on rehearing 120 So.2d 852 (La. App., 1960), the Court held that cash money was not the type of commercial paper which the Negotiable Instruments Law (NIL) (then in effect in Louisiana) was designed to cover, therefore Civil Code article 2139 was controlling. While holding that cash itself was governed by the Civil Code, the Court, under the maxim of *expressio unis est exclusio alterius,* held in effect that the result would have been different had the NIL applied. Here, checks were used to pay debts. Checks are negotiable instruments clearly within the scope of the commercial laws; thus, when payment to defendants became final, plaintiff later could not attack the payment as having been made with stolen funds.[2]

When Graves transferred funds to his own account, his action was tantamount to Delta's honoring an overdraft. Graves wrote checks for more money than he had in his account, and Bank funds were used to cover the checks. The innocent payees who cashed or deposited the checks should not be liable for theft occurring within the Delta organization. Delta is in a superior position to discover fraud within its own walls, since it alone chooses its employees; moreover, it would hinder negotiability to require third parties to investigate bank employees' reputations, or personal honesty, before dealing with them on personal business.[3]

## II.

■ To recoup one part of the insurance claims it paid, Aetna also is suing Baker Bank for a debit Baker made against Delta's account with it. Baker made a loan to Graves. When it became due, Graves telephoned Baker to debit Delta's account with it; hence, by this device, Graves paid his personal debt, at least temporarily, with Delta's funds. Thus Graves's action violated Louisiana Statutes which bar certain bank employees from confecting loans from their employer bank.[4]

Once again we must decide who should bear the loss when the fault seems to be bifurcated. We already have discussed Delta's fault, namely its trust in Graves, a dishonest employee who held important positions with it, both as cashier and executive vice-president. But Delta's fault is outweighed in this instance by Baker's. Baker never should have allowed Graves to debit Delta's account, since Graves's personal use of the funds was opposed to his employer's interests; thus Baker was on notice that it

---

1. La.Revised Civil Code of 1870, article 2139: "If money, or other stolen property, be given in payment, the payment is not good, and the owner may recover the amount paid."

2. Plaintiff's argument that defendants could not be holders in due course as mere payees under the NIL is correct. *Beneficial Finance Company of New Orleans v. Bienemy,* 244 So.2d 275 (La.App. 4th Cir., 1971). But holder-in-due-course status is irrelevant since the checks went through the final payment stage. Claims in warranty are the only possible liabilities once final payment is achieved, and here no warranty was breached under La.R.S. 7:65 and 66.

3. *First National Bank of Birmingham, Alabama v. Gibert & Clay,* 123 La. 845, 49 So. 593 (1909). The Court said the Bank had a duty to check its own affairs and a brokerage firm dealing with a Bank employee owed no duty to investigate the teller further than the teller's representations. In balancing the blame, the Court held the Bank should bear the loss for placing "blind confidence" in its teller, rather than placing the loss on the broker, who likewise was misled.

4. La.R.S. 6:10:
   "No active president nor active vice president nor cashier nor assistant cashier, nor other employee of any banking association, savings bank or trust company shall borrow any of its funds *directly or indirectly* for himself or for any corporation of which he is an active officer . . . ." (Emphasis added.)
   La.R.S. 6:259, as amended:
   ". . . No banking association, savings bank, or trust company shall make any loans to its president, vice president, cashier, assistant cashier, or employees, who are in active management, unless these loans are approved by a resolution of the board of directors at a meeting at which the applicant for the loan shall not be present . . . ."

was dealing with Graves at its own risk, and it had a heavy duty to inquire into the extent of Graves's authority. *Federal Insurance Company v. C. & W. Transfer & Storage Company,* 282 So.2d 563 (La.App. 4th Cir., 1973); *Carey Hodges Associates, Inc. v. Continental Fidelity Corporation,* 264 So.2d 734 (La.App. 1st Cir., 1972); *Langlois v. Gragnon,* 123 La. 453, 49 So. 18 (1909).

■ Baker contends that Delta ratified Graves's act. The very cases Baker cites refute its position. *Serio v. American Brewing Co.,* 141 La. 290, 74 So. 998 (1917), rehearing den. 1917, and *Szymanski v. Plassan,* 20 La.Ann. 90 (La.App. 4th Cir., 1868), both hold that ratification occurs when, and only when, the principal, with full knowledge of all the facts, adopts the agent's acts as its own. Here, Graves surreptitiously concealed his theft, therefore Delta could not have ratified Graves's acts with full knowledge of the attendant circumstances. Indeed, these were discovered substantially later. Acts which are prohibited by law and are against good public order are not capable of being ratified. *Nelson v. Walker,* 250 La. 545, 197 So.2d 619 (1967). Silence and inaction result in a presumption of ratification *juris et de jure* only when the agent's acts legally are capable of being ratified, and when there exists an absolute duty on the principal to speak out. *Succession of Delesdernier,* 184 So.2d 37 (La.App. 4th Cir., 1966). As noted, Graves's action was illegal, and thus incapable of being ratified.

■ Baker, citing the NIL, argues that plaintiff's claim has prescribed. In the first place, La.R.S. 6:53 sets forth a one-year peremptive period for filing suit in a forged or raised check situation. Here we are not dealing with a check, so that statute is not pertinent. Even more controlling is the rule that prescription does not run against an illegal act or one insusceptible of ratification. *Nelson v. Walker, supra.*

Through the self-serving testimony of Ardoin, one of Baker's commercial loan officers, defendant seeks to have us recognize a banking custom of allowing an employer bank to discharge an employee's loan by a mere telephonic request from the employee. The evidence is sufficient here only to disclose a very poor banking practice, hopefully confined to relatively few banks. The practice is forbidden explicitly by law, and there exists no reason whatever to permit a custom *contra legem* here.

■ Finally, Baker calls our attention more than once to Ardoin's words to the effect that Graves's $3,000 loan was really nothing, and using Delta's credit to pay off such an insignificant sum was a routine type transaction. Baker suggests that if the loan had been greater than $10,000, then it might have been required to take greater precautions. Three thousand dollars to some banking clients is quite a substantial amount, regardless of the bank's wealth. A bank has a fiduciary duty to each customer to protect his interest. Allowing the transfer of $3,000 to Graves for his personal benefit on the strength of a phone call from Graves himself does not satisfy Baker's fiduciary obligation and is not sound banking practice.

The parties are hereby instructed to prepare a judgment in accordance with the above ruling within fifteen days of this date granting judgment to plaintiff against Baker Bank, with accrued interest at Louisiana's legal rate, and rejecting plaintiff's demands against all other defendants. All Court costs are to be assessed equally between plaintiff and Baker Bank.