521 So.2d 674 (1988)
SEAGO, PATRICK, CARMICHAEL & MILLER, a Professional Law Corporation
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
SEAGO, PATRICK, CARMICHAEL AND MILLER
v.
DUPLESSIS CADILLAC.
Nos. 86 CA 1671, 86 CA 1672.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*675 Barry W. Miller, Peter Carmichael, Seago, Patrick, Carmichael & Miller, Baton Rouge, for plaintiff-appellant.
Richard S. Thomas, Baton Rouge, for defendant-appellee State Farm Mut. Auto. Ins. Co.
William Morvant, E. Wade Shows, Baton Rouge, for defendant-appellee Duplessis Cadillac.
Before WATKINS, CARTER and FOIL, JJ.
*676 CARTER, Judge.
This is an appeal from the trial court's granting of a motion for involuntary dismissal on behalf of Duplessis Cadillac, Inc. (Duplessis) and a motion for directed verdict in favor of State Farm Mutual Automobile Insurance Company (State Farm).

FACTS
In 1982, Kate L. Daenen was hired as a bookkeeper by the law firm of Seago, Patrick, Carmichael & Miller (Seago) with duties and responsibilities including keeping the firm books and records, managing the office, ordering supplies, and writing checks. Mrs. Daenen was given the authority to write checks on the firm's "clients' cost account" which was maintained with Baton Rouge Bank. The account was established to pay advance costs such as deposition costs, court costs, and travel expenses. Although firm policy authorized Mrs. Daenen to write checks of $500.00 or less, a corporate resolution provided by Seago to Baton Rouge Bank provided that Mrs. Daenen, as agent of the law firm, was authorized to write checks without limitation as to amount and for any purpose including payment of an individual obligation.
During her employment, Mrs. Daenen allegedly issued numerous checks drawn on the clients' cost account for payment of her personal obligations, including two checks issued to Duplessis for repairs allegedly performed on Mrs. Daenen's personal vehicle and two checks issued to State Farm for insurance on her personal vehicle. The first check was for $1,011.97, and the second check was for $578.29. Both checks were issued to Duplessis in payment for service and repairs that were actually performed by Duplessis. The checks issued to State Farm were for $671.49 and $182.77, respectively.
Approximately five months after the first check had been issued, Seago discovered the improper use of clients' funds. Following an investigation of the matter, a compromise and settlement was entered into between Seago and Mrs. Daenen on September 23, 1983. Therein, in exchange for $16,000.00 and Mrs. Daenen's Cadillac (the same vehicle repaired by Duplessis and insured by State Farm), Seago released Mrs. Daenen from all claims and causes of action which could be asserted against her by Seago.
Thereafter, Seago filed suits to recover stolen money against State Farm, under docket number XXXX-XXXX, and against Duplessis, under docket number 8312-8693. The matters were subsequently consolidated. At the close of Seago's case, State Farm filed a motion for directed verdict, and Duplessis filed a motion for involuntary dismissal, both of which were granted by the trial judge.
From this judgment, Seago appealed, raising numerous issues.[1] Duplessis and *677 State Farm answered the appeal, seeking damages for frivolous appeal. Except for the matters hereinafter discussed, we find that the trial court in his written reasons for judgment, which we adopt as our own, correctly addressed and disposed of the various issues raised by Seago. On appeal, however, Seago contends that LSA-R.S. 9:3805 of the Uniform Fiduciaries Law is directly on point and controls the outcome of this case.

BREACH OF FIDUCIARY DUTY UNDER LSA-R.S. 9:3805
In the instant case, Kate L. Daenen was authorized to issue the checks in question pursuant to the express authority granted to her by virtue of the resolution filed with Baton Rouge Bank. The resolution gave Mrs. Daenen the authority to write an unlimited number of checks in unlimited amounts to any party for any reason, including the authority to pay her own personal debts with firm checks. While these provisions in the resolution clearly protected Baton Rouge Bank from any liability which might arise under the provisions of the Uniform Fiduciaries Law, LSA-R.S. 9:3807-3810,[2] the resolution did not give Mrs. Daenen the authority to pay her personal obligations, like automobile repair bills and liability insurance premiums with funds from Seago's "clients' cost account." In fact, the record clearly reflects that, as between Seago and Mrs. Daenen, she was not authorized to pay her personal obligations with funds from the company account and that her authority *678 was limited to $500.00. Clearly, Mrs. Daenen breached her fiduciary duty in writing the checks in question to pay her personal obligations.
Having determined that Mrs. Daenen breached her fiduciary duty, we must determine whether such breach gives rise to an action against the named payees under LSA-R.S. 9:3805.
LSA-R.S. 9:3805 provides as follows:
If a check or other bill of exchange is drawn by a fiduciary as such or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of, or as security for, a personal debt of the fiduciary, to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.
For a payee to become liable for a misappropriation under the Uniform Fiduciaries Act, LSA-R.S. 9:3801 et seq., it must be found either that the payee had actual knowledge of the misappropriation or that it acted in bad faith. Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358 (La.App. 3rd Cir.1982). See In Re: Tutorship of Angela Marie Mitchell, 519 So.2d 764 (La.1988).
In the instant case, there is no evidence that either Duplessis or State Farm had actual knowledge that Mrs. Daenen had misappropriated the funds she gave as payment for her personal obligations. Further, the record is devoid of any evidence establishing that either payee acted in bad faith in accepting the checks as payment for Mrs. Daenen's obligations. Clearly, the trial court was correct in finding that Seago was not entitled to recover the misappropriated sums from Duplessis and State Farm.

FRIVOLOUS APPEAL
Both Duplessis and State Farm contend that they are entitled to an award of damages for frivolous appeal pursuant to LSA-C.C.P. art. 2164. This statute is penal in nature and must be strictly construed. Fernon v. Jordan, 472 So.2d 247 (La.App. 1st Cir.1985); Salmon v. Hodges, 398 So.2d 548 (La.App. 1st Cir.1979). Appeals, however, are favored and damages for frivolous appeal are not granted unless they are clearly due; e.g., when there are no serious legal questions, when it is manifest that the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel is not serious in his advocating the view of law which he represents. Fernon v. Jordan, supra; Salmon v. Hodges, supra.
In the case sub judice, defendants have not established that this appeal is frivolous. Although we find that the plaintiff's arguments are without merit, a serious legal issue is involved in the interpretation of LSA-R.S. 9:3805, and damages are clearly not warranted in this case.

CONCLUSION
For the above reasons and for the reasons of the trial judge incorporated herein, the judgment of the trial court dismissing plaintiff's suits with prejudice is affirmed. Costs of this appeal are to be paid by Seago.
AFFIRMED.

CITY COURT

CITY OF BATON ROUGE

STATE OF LOUISIANA

WRITTEN REASONS FOR JUDGMENT
LEWIS S. DOHERTY, III, Judge Ad Hoc.
These two consolidated suits arise out of the embezzlement of an employee of a law *679 firm. In both cases, the firm is seeking to recover funds from defendants which were utilized by the employee to pay her personal accounts. The facts are not in dispute. They show that the firm of Seago, Patrick, Carmichael and Miller (hereinafter described as the "Firm") hired Kate L. Daenen in October of 1982 as their bookkeeper. With reference to one of the four firm accounts, described as the "Client's Cost Account", she was internally authorized by the Firm to write checks to pay the bills of the law firm including office supplies, books, salaries of employees, and other debts incurred by the law firm and this authority was limited to $500.00 per check in accord with Firm policy. However, a resolution was furnished the Baton Rouge Bank which made Ms. Daenen the agent of the Firm with the authority to sign and endorse checks and drafts without any limitation.
Subsequently, after several months it was discovered that Ms. Daenen had written numerous checks on this account wherein she paid her own personal bills and obligations. Two of these checks were used to pay Duplessis Cadillac for repairs to Ms. Daenen's automobile and to State Farm Mutual Automobile Insurance Company to pay for her automobile insurance premium. Both of these defendants have resisted plaintiff's efforts to recoup its losses. However, it should be pointed out that a subsequent settlement was entered into between the law firm and Ms. Daenen in which she made some retribution (sic). Following the presentation of plaintiff's case, State Farm made a Motion for A Directed Verdict and Duplessis made a Motion for Involuntary Dismissal. Since the issue of plaintiff's recovery against the two defendants is essentially one of law, the Court requested memorandums from the respective parties and thereafter took the matter under advisement.
Plaintiff in these cases primarily bases its claim upon former Civil Code article 2139 which states:
If money, or other stolen property, be given in payment, the payment is not good, and the owner may recover the amount paid.
This article was repealed in 1984, and has been replaced by Civil Code articles 1856 and 521. Civil Code article 1856 reads as follows:
An obligation that may be extinguished by the transfer of a thing is not extinguished unless the thing has been validly transferred to the obligee of performance.
Civil Code article 521 provides:
One who has possession of a lost or stolen thing may not transfer its ownership to another. For purposes of the Chapter, a thing is stolen when one has taken possession of it without the consent of its owner. A thing is not stolen when the owner delivers it or transfers its ownership to another as a result of fraud.
The comments to article 1856 reinforce the language of article 521 as follows:
... if the obligor ... uses a thing whose title he has obtained from the owner by fraudulent means, the thing is not stolen; so the obligee to whom it is transferred acquires a valid title ... (emphasis supplied by Court).
In the present instance, the evidence is irrefutable that, while there has been a conversion of the law firm's funds by Ms. Daenen for her benefit, they were not "stolen" within the meaning of former article 2139 or under the present articles 1856 and 521 in that Ms. Daenen had been furnished by the law firm with general authority with reference to the issuance of drafts and checks on the subject account.
But in any event, this case is not governed by the Civil Code, but rather by the Negotiable Instrument Law. In Aetna Casualty & Surety Co. v. Graves, 422 F.Supp. 1046 (W.D.La.1976), the Court pointed out that the use of checks is governed by Title 10 of the Revised Statutes and more specifically, the Negotiable Instrument Lawwhile cash is governed by Civil Code article 2139. Specifically, the Court stated in Graves:
... Plaintiff further argues that it should be allowed to recover the stolen *680 funds under La. Revised Civil Code of 1870, article 2139. Graves paid his debts with the checks, not with currency. In Crawford v. Alatex Construction Service, Inc., La.App., 120 So.2d 845, aff'd on rehearing 120 So.2d 852 (La.App., 1960), the Court held that cash money was not the type of commercial paper which the Negotiable Instruments Law (NIL) (then in effect in Louisiana) was designed to cover, therefore Civil Code article 2139 was controlling. While holding that cash itself was governed by the Civil Code, the Court, under the maxim of expressio unis est exclusio alterius, held in effect that the result would have been different had the NIL applied. Here, checks were used to pay debts. Checks are negotiable instruments clearly within the scope of the commercial laws; thus, when payment to defendants became final, plaintiff later could not attack the payment as having been made with stolen funds.
The next issue relates to whether the defendants are holders in due course. If the defendants are holders in due course, then under LSA-R.S. 10:3-305:
... he takes the instrument free from... all claims to it on the part of any person ...
The only disputed issue as to whether the defendants are holders in due course is whether the defendants took "... the instrument... without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." See LSA-R.S. 10:3-302. The issue then becomes: did the defendants have notice?
The plaintiff claims that the defendant had notice as set out in LSA-R.S. 10:3-304(2):
(2) The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.
The comments to that article do not support plaintiff's position:
... mere notice of the existence of the fiduciary relation is not enough in itself to prevent the holder from taking in due course, and he is free to take the instrument on the assumption that the fiduciary is acting properly.
The plaintiff also claims that because Ms. Daenen was paying her personal debts with Firm funds and, that under "Agency Law", the defendants had a duty to investigate the extent of her authority. In either case, the Agency claim or the 10:3-304 claim, the most logical approach to determine the validity of the transaction would seem to have been to contact the bank on which it is commonly known that one can verify the negotiability of a check through the bank on which it is drawn. Had either defendant done so, an examination of the resolution filed by the Firm would have shown that the Firm had authorized Ms. Daenen to write unlimited checks, in unlimited amounts, to any party, for any reason even to the extent that she was authorized to pay her own debts with Firm checks. The most pertinent language is as follows:
... including all such instruments payable or endorsed to the personal order of the officer or officers, agent or agents signing on behalf of this Corporation, or any other officer or officers, agent or agents of this Corporation, or otherwise, whether tendered in payment of the individual obligation or deposited to the personal account of ... (emphasis added).
[See Corporate Resolution of Seago, Patrick & Carmichael, paragraph 3 as filed with Baton Rouge Bank.] It would seem more reasonable to require a payee to verify the authority of the maker of a check with the drawee bank (if that duty is mandated) than to require him to track down the officer of a corporation or partnership; the bank personnel are more readily accessible.
A case which seems to be most closely similar to the present factual situation is Ashley-Hall Interiors, Ltd., Inc. v. Bank of New Orleans, 389 So.2d 850 (La.App. 4th Cir.). In Ashley-Hall the plaintiff company's bookkeeper had exclusive control *681 over writing checks on corporate accounts, paying bills, making deposits, recording accounts and maintaining inventory controls. 389 So.2d at 851. As in the present case, a corporate officer was assigned to supervise the duties of the bookkeeper and failed to do so. In Ashley, however, the background of the bookkeeper was checked, as was not true in the present case. The Ashley bookkeeper diverted company funds by paying her own debts with company debts (as was done in the present case) but she also made checks payable to herself which she cashed at the bank. The plaintiff in that case sued the bank on which the checks were drawn for recovery. The court denied relief relying on Title 10 provisions requiring the depositor to closely examine his statement and report promptly any discrepancies, and also 10:3-406 which reads as follows:
Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration of lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.
LSA-R.S. 10:3-406.
Another case that is very relevant to this discussion is Tylock v. Perry, 336 So.2d 999 (La.App. 3rd Cir.1976). In that case, Perry wrote a corporate (Perry & Tylock, Inc.) check to Miller to satisfy a personal debt. Tylock sought to recover the sums paid from Miller; he claimed recovery under CC 2301 and because the funds were "stolen". In the following language, the court denied recovery:
According to plaintiff's pleadings, the payment which was made to Miller in the instant suit was to satisfy a debt which was owed to him by Perry. Miller thus did not receive something which was not due him. The check was not forged, but instead it was signed by an officer who had authority to make withdrawals from the account of the corporation. Miller accepted and cashed the check in good faith, and the check was obviously honored by the drawee bank. Under those circumstances we agree with the trial judge that plaintiff's pleadings fail to state a cause of action against defendant Miller.
Plaintiff, in his memorandum, states several cases for the proposition that the authority of an employee to act on behalf of a corporation must be specifically granted by the corporation. Plaintiff claims that such authority was not granted in the present case and that consequently the defendants had no right to accept the checks for their face value. Specifically, plaintiff thoroughly discusses Margolis v. Allen Mortgage & Loan Corp., 268 So.2d 714 (La.App. 4th Cir.1972) and Lilliedahl & Mitchel, Inc. v. Avoyelles Trust & Savings Bank, 352 So. 2d 781 (La.App. 3rd Cir.1977). While the cases do in fact stand for the above proposition, the plaintiff herein had filed a resolution with B.R. Bank which gave Ms. Daenen the authority to act on its behalf in matters concerning its checking account. Lilliedahl further held that the resolution under which the defendant in that case acted did not grant him authority to apply corporate funds to his personal indebtedness. However, in the present case, the resolution specifically authorized the payment of checks even when the payment was made on a personal debt.
It is, therefore, the opinion of this Court that the defendants are holders in due course without notice of any infirmity and accordingly, each is free from any of the defenses raised due to the issurance of the checks in contravention of the Firm's own internal policy. For the reasons assigned, both the Motion for a Directed Verdict made by State Farm Mutual Automobile Insurance Company is granted, as well as the Motion for Involuntary Dismissal raised by Duplessis Cadillac, are granted and plaintiff's suit in each instance is dismissed at its cost.
Thus rendered this 10 day of September, 1986, at Baton Rouge, Louisiana.
NOTES
[1] The following issues were raised by Seago on appeal:

A. Did the trial court properly grant the motions for directed verdict and involuntary dismissal made by the defendants/appellees, State Farm and Duplessis?
B. Did the trial court properly find that the defendants/appellees were holders in due course of the checks, taking said checks free from any and all claims of the law firm?
C. Did the trial court properly ignore the Louisiana Agency Law which would require the defendants/appellees, Duplessis and State Farm, to have made reasonable inquiry of the law firm in order to determine the scope of Kate L. Daenen's authority to use corporate checks to pay personal debts?
D. Is the law firm entitled to recover the funds which were improperly and illegally paid to the defendants/appellees with funds stolen and embezzled by their bookkeeper/employee, Kate L. Daenen?
E. Is the law firm entitled to recover the funds, as represented by the checks introduced into evidence in this proceeding, which were paid to the defendants/appellees, without having to show actual knowledge on the part of said defendants/appellees that the funds were stolen and embezzled from the law firm? Does the law firm have to show actual bad faith on the part of the defendants/appellees before it can recover the funds which were improperly paid to the defendants/appellees and if so, has the law firm shown actual bad faith and knowledge on the part of the defendants/appellees?
F. Should the judgment of the trial court granting the motion for directed verdict made by State Farm and the involuntary dismissal made by Duplessis be reversed and vacated, and the matter remanded back to the trial court for further proceedings?
[2] A bank's liability under the Uniform Fiduciaries Law is provided for in the following:

LSA-R.S. 9:3807 provides:
If a deposit is made in a bank to the credit of the fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof, upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check, or with the knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such check is payable to the drawee bank and is delivered to it in payment of, or as, security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.
LSA-R.S. 9:3808 provides:
If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account the bank is authorized to pay any such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with the knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank and is delivered to it in payment of, or as security for, a personal debt of the fiduciary to it, the bank is liable to the principal, if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.
LSA-R.S. 9:3809 provides:
If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless, the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the checks amounts to bad faith.
LSA-R.S. 9:3810 provides:
When a deposit is made in a bank in the name of two or more persons as trustees and a check is drawn upon the trust account, by any trustee or trustees, authorized by the other trustee or trustees to draw checks upon the trust account, neither the payee nor other holder, nor the bank, is bound to inquire whether it is a breach of trust to authorize such trustee or trustees to draw checks upon the trust account, and is not liable unless the circumstances be such that the action of the payee or other holder or the bank amounts to bad faith.