NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1318

ST. FRANCISVILLE BK, LLC

VERSUS

JEC REAL ESTATE INVESTMENT, LLC, ET AL.

*DATE OF JUDGMENT:*    FEB 2 3 2022

ON APPEAL FROM THE TWENTIETH JUDICIAL DISTRICT COURT
NUMBER 23164, DIVISION A, PARISH OF WEST FELICIANA
STATE OF LOUISIANA

HONORABLE KATHRYN E. "BETSY" JONES, JUDGE

* * * * * *

Curtis R. Shelton
Lee H. Ayres
Ryan P. Telep
R. Chaz Coleman
Shreveport, Louisiana

Counsel for Third Party Defendants-
Appellants, Petro-Chem Operating
Company, Inc., Larry L. Hock, and
Universal Energy, LLC

Sidney W. Degan, III
Travis L. Bourgeois
New Orleans, Louisiana

Counsel for Third Party Defendant/
Third Party Plaintiff-Appellee, StarNet
Insurance Company

Michael Keeley
C. Adams Brinley
Dallas, Texas

Phillip W. Preis
Baton Rouge, Louisiana

Counsel for Defendant/Third Party
Plaintiff/Defendant-Appellee,
Delta Bank

* * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

Disposition: REVERSED AND REMANDED.

**CHUTZ, J.**

The defendants appeal a summary judgment ordering them to return $2,000,000.00 an attorney misappropriated from a client trust account and used to pay an obligation he owed to the defendants. For the following reasons, we reverse and remand this matter to the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2017, Delta Bank (Delta) hired James Rex Fair, Jr. (Fair) to act as the closing attorney for a real estate transaction to be financed by Delta. On November 20, 2017, at 2:18 p.m., Delta wire transferred $2,435,045.41 to Fair's client trust account (the trust account) with the intent that he distribute the funds in accordance with the settlement statement. Immediately prior to the wire transfer, the balance in the trust account was only $150,701.29. Approximately ten minutes after receiving the Delta wire transfer, Fair initiated three wire transfers totaling $2,000,000.00 from the trust account to the following parties, who had no connection with the proposed real estate transaction: $625,000.00 to Universal Energy, LLC (Universal); $625,000.00 to Universal on behalf of Larry and Norma Hock; and $750,000.00 to Petro-Chem Operating Company, Inc. (collectively, the defendants). No other deposits or transfers were made to the trust account between the receipt of the Delta wire transfer and the initiation of the wire transfers to the defendants.

Fair owed an obligation to the defendants in the amounts transferred because they had previously deposited funds in those amounts with him to be held in escrow pending a potential investment deal. Pursuant to escrow agreements between the defendants and Fair, the defendants were entitled to the return of their funds if the investment deal was not completed by certain specified dates. The investment deal was not finalized by the specified dates and, in fact, was never completed. On November 16, 2017, several days before the Delta wire transfer, the defendants

2

demanded a return from Fair of the respective amounts they had deposited in escrow in the trust account. Fair made the November 20, 2017 wire transfers to the defendants in response to these demands.

After Fair unexpectedly passed away on January 7, 2018, a conservator was appointed to handle the affairs of his law practice. Shortly thereafter, the conservator notified Delta that the loan proceeds it had wire transferred to Fair were never sent to the seller in accordance with the closing statement and, moreover, those proceeds were not in the trust account. Once Delta learned of the $2,000,000.00 in wire transfers to the defendants on the same date as Delta's wire transfer, counsel for Delta sent letters to the defendants demanding the return of the funds Fair wire transferred to them. A similar demand letter was sent to the defendants by counsel for StarNet Insurance Company (StarNet), which had previously issued a "Financial Institutions Bond for Depository Institutions" (Bankers Bond), as well as a "Management Liability Insurance Policy," to Delta (through Delta's holding company). The defendants did not return any funds to Delta.

Extensive litigation resulted from Fair's misappropriation of the Delta loan proceeds from the trust account. The prospective seller in the sale the loan proceeds were intended to finance filed suit naming Delta, among others, as a defendant. Delta therein filed a third-party demand against StarNet. In its petition, Delta asserted StarNet was liable for the losses Delta sustained as a result of Fair's misappropriation both under the Bankers Bond and the liability policy it had issued. Delta and StarNet eventually reached a settlement, and Delta assigned all of its rights against the defendants to StarNet.

In its capacity as Delta's assignee, StarNet filed a third-party demand against the defendants asserting a revendicatory action for the return of property, as well as claims for conversion, fraud, civil conspiracy, and unjust enrichment. StarNet

3

prayed for judgment against the defendants for $1,849,298.71, which it asserted was "the amount Fair transferred to the [the defendants] that is identifiable and traceable."[1] Subsequently, on July 6, 2020, StarNet filed a motion for summary judgment against the defendants for $2,000,000.00, plus legal interest. In its motion, StarNet argued it was entitled, as Delta's assignee, to a return of the "stolen" loan proceeds transferred to the defendants based on claims for a revendicatory action, conversion, and unjust enrichment. Thereafter, the defendants filed a cross motion for summary judgment seeking dismissal of StarNet's claims.

Following a hearing on StarNet's motion for summary judgment, the district court granted the motion and signed a judgment on August 26, 2020, ordering the defendants, collectively, to pay StarNet a total of $2,000,000.00, plus legal interest. Each defendant was ordered to pay the amount they had received from Fair by wire transfer, i.e., Larry Hock $625,000.00, Universal Energy, LLC $625,000.00, and Petro-Chem Operating Company $750,000.00.[2] In its oral reasons for judgment, the district court concluded the funds the defendants received could be tracked through its various transfers between banks, and, therefore, were "in effect the same money" Delta wire transferred to Fair and must be returned by the defendants since Fair stole those funds from Delta. The district court rejected StarNet's claim of unjust enrichment, finding Fair was the only party at fault and the only party unjustly enriched by his actions. Additionally, on September 3, 2020, the district court signed a judgment holding the defendants' motion for summary judgment was moot as a result of the summary judgment in favor of StarNet.

---

[1] This figure is reached by subtracting $150,701.29 (the balance in the trust account immediately prior to Delta's wire transfer) from $2,000,000.00 (the total amount transferred to the defendants).

[2] The district court certified the judgment as a final judgment pursuant to La. C.C.P. art. 1915(B) since it fully resolved StarNet's third-party demand against the defendants, and there was no overlap of factual or legal issues with the only remaining claim in this suit, a third-party demand involving different parties.

4

The defendants now appeal the August 26, 2020 summary judgment in favor of StarNet. In five assignments of error, they argue the district court committed legal and factual error: 1) in failing to distinguish between stolen things and things obtained by fraud for purposes of applying La. C.C. art. 521; 2) in finding the funds transferred by Fair to the defendants were the same funds Delta wire transferred to the trust account; 3) in concluding a party without fault can be liable for conversion; 4) in failing to apply comparative fault; and 5) in determining there were no issues of material fact regarding the amount of Delta's actual damages.

## SUMMARY JUDGMENT

After there has been an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents admitted for purposes of the motion for summary judgment show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4). Appellate courts review evidence *de novo* under the same criteria that govern the district court's determination of whether summary judgment is appropriate. *Alvarado v. Lodge at the Bluffs, LLC*, 16-0624 (La. App. 1st Cir. 3/29/17), 217 So.3d 429, 432, writ denied, 17-0697 (La. 6/16/17), 219 So.3d 340. The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). All reasonable inferences that may be drawn from the record are to be viewed in the light most favorable to the non-movant, and all doubts should be resolved in favor of the non-movant. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So.2d 764, 765 (*per curiam*).

## DISCUSSION

Based on our *de novo* review, we find StarNet failed to establish it was entitled as a matter of law to judgment awarding recovery from the defendants of the funds misappropriated by Fair.

5

It is undisputed that Fair violated his fiduciary duty to Delta when he misappropriated the closing funds Delta transferred to him by using the funds to pay his personal obligations to the defendants rather than distributing the funds in accordance with the closing statement. See *Louisiana State Bar Association v. Nabonne*, 539 So.2d 1207, 1209 (La. 1989). Nevertheless, that fact is not dispositive of the issue of whether StarNet, as Delta's assignee, is entitled to recover the funds misappropriated by Fair from the good faith beneficiaries of wire transfers who received the funds in satisfaction of legitimate obligations owed to them by Fair.

Louisiana Revised Statutes 9:3805[3] is part of the Uniform Fiduciaries Law (aka the Uniform Fiduciaries Act (UFA)) and provides:

> If a check or other bill of exchange is drawn by a fiduciary as such or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of, or as security for, a personal debt of the fiduciary, to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to

---

[3] Citing La. C.C.P. art. 1005, StarNet argues the defendants waived the right to assert the "good faith" affirmative defense provided in La. R.S. 9:3805 by failing to plead it in the district court. An affirmative defense raises a new matter that constitutes a defense to the action and will have the effect of defeating the plaintiff's demand on its merits, even assuming the allegations in the plaintiff's petition are true. The purpose of requiring affirmative defenses to be affirmatively pled is to give the plaintiff fair and adequate notice of the nature of the defense. Therefore, a defendant is not required to raise an issue as an affirmative defense if it does not raise a "new matter." *Succession of Ciervo v. Robinson*, 19-0140 (La. App. 1st Cir. 12/12/19), 291 So.3d 1063, 1075. In this case, while the defendants did not plead the UFA as an affirmative defense, the essence of the defense provided by La. R.S. 9:3805 is that the payee was in good faith and/or had no knowledge of the fiduciary's breach of duty. In this case, StarNet's petition itself put those matters at issue in that it alleged the defendants knew all along Fair had wired the defendants loan proceeds stolen from Delta and, in fact, conspired with Fair to convert Delta's funds so that Fair could repay his obligations to them. Accordingly, because consideration of La. R.S. 9:3805 raises no new matters unfairly surprising StarNet, the defendants did not waive the right to have this issue considered.

the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.

For purposes of applying the provisions of the UFA, wire transfers are treated as being analogous to a check.[4] See *Richards v. Platte Valley Bank*, 866 F.2d 1576, 1580-81 (10th Cir. 1989); *U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.*, (N.D. Iowa 2014), 2014 WL 6474183, at *26 n.11; *Nations Title Insurance of New York, Inc. v. Bertram*, 140 Ohio App.3d 157, 163, 746 N.E.2d 1145, 1150 (2000); *In re Petters Co., Inc.*, 565 B.R. 154, 165-66, (Bankr. D. Minn. 2017). In order for a payee of a check or other bill of exchange to be liable for the receipt of misappropriated funds under this provision, the payee must have acted in bad faith or had actual knowledge of the misappropriation. *Seago, Patrick, Carmichael & Miller v. State Farm Mutual Automobile Insurance Company*, 521 So.2d 674, 678 (La. App. 1st Cir. 1988); *Pargas, Inc. v. Estate of Taylor*, 416 So.2d 1358, 1361 (La. App. 3d Cir. 1982). See also *In Re: Tutorship of Angela Marie Mitchell*, 519 So.2d 764, 768 (La. 1988).

In the instant case, there is no evidence the defendants were in bad faith or had knowledge of the misappropriation of Delta's funds. Prior to requesting the return of their funds from Fair, the defendants asked that he provide proof of funds. Fair provided them with a letter purportedly from an official at Sabine State Bank stating the balance in the trust account as of November 14, 2017, was $3,159,285.85, which was more than adequate to cover the amount of the defendants' deposited funds. While that purported balance does not correspond to the actual balance shown

---

[4] Louisiana Revised Statutes 9:3813 provides that the provisions of the UFA should be interpreted and construed so as to effectuate its general purpose to make uniform the law of those states which enact it. See also *Guaranty Bank & Trust Company of Alexandria v. C & R Development Company*, 260 La. 1176, 1183-84, 258 So.2d 543, 545 (1972); La. C.C. art. 13 (laws on the same subject matter should be interpreted in reference to each other); 20 La. Civ. L. Treatise, *Legislative Law & Procedure* § 7:7 (2020) (review of other statutes may include federal laws and the laws of other states and case law construing them).

on Fair's bank statement for that date, the defendants had no actual knowledge of that fact or reason to doubt the accuracy of the stated balance.[5] Moreover, the amounts the defendants received from Fair were the exact amounts they had deposited with him. Finally, there is no question Fair had authority in his capacity as a fiduciary to initiate wire transfers of funds from his law firm's trust account.

Further, we find no merit in StarNet's argument that the defendants are liable for the return of the funds under the last sentence of La. R.S. 9:3805 because they knew Fair transferred the funds to them in payment of his personal debts to them. Even assuming *arguendo* that a party holding funds in escrow is a debtor of the funds' owner, in considering La. R.S. 9:3805, courts have looked to more than the mere fact that the misappropriated funds were used by the fiduciary to pay a personal debt. In *Seago*, this court held the plaintiff was not entitled under La. R.S. 9:3805 to recover misappropriated funds from the payees who received the funds, even though the funds were used to pay the fiduciary's personal debts for insurance premiums and repairs to her personal vehicle. In applying La. R.S. 9:3805, the *Seago* Court relied on the fact that neither payee "had actual knowledge that [the fiduciary] had misappropriated the funds she gave *as payment for her personal obligations*" or acted in bad faith in accepting the checks as payment for the fiduciary's obligations. *Seago*, 521 So.2d at 678. (Emphasis added.) Similarly, in *Guaranty Bank*, the Supreme Court looked not merely at the fact that the fiduciary used corporate funds to pay a personal debt. Rather, the Supreme Court held the bank was in bad faith because it had before it clear evidence of a probable misappropriation since it was both the drawee bank and payee of the corporate checks the fiduciary used to pay his personal debts to the bank. *Guaranty Bank*, 258 So.2d at 547. In the instant case, however, there was absolutely no evidence of

---

[5] There is no evidence in the record indicating how Fair produced this letter.

bad faith by the defendants or of anything putting them on notice of a probable misappropriation of Delta's funds.

While Delta was clearly a victim of Fair's misdeeds and we are sympathetic to its plight, the record is devoid of any evidence that the defendants had actual knowledge of the misappropriation or acted in bad faith in accepting the wire transfers as payment for the obligations Fair owed them. Accordingly, the district court erred in ordering the defendants to return the funds they received by wire transfer from Fair. Under La. R.S. 9:3805, StarNet was not entitled to recover the misappropriated funds from the defendants in the absence of the defendants' bad faith or actual knowledge of the misappropriation.[6] See *Seago*, 521 So.2d at 678.

## CONCLUSION

For these reasons, the August 26, 2020 district court judgment granting summary judgment in favor of third-party plaintiff, StarNet Insurance Company, holding third-party defendants, Universal Energy, LLC, Larry Hock, and Petro-Chem Operating Company, Inc., collectively, liable for $2,000,000.00 is hereby reversed. This matter is remanded to the district court for further proceedings consistent with this opinion. All costs of this appeal are assessed to StarNet Insurance Company.

**REVERSED AND REMANDED.**

---

[6] The present situation presents competing interests of innocent parties between protecting the security of ownership and protecting the security of transaction. See Tanya Ann Ibieta, *The Transfer of Ownership of Movables*, 47 La. L. Rev. 841 (1987). In enacting La. R.S. 9:3805, it appears the legislature has indicated that precedence should be given in those situations where the provision is applicable to protecting the security of transaction.